1  Duffy Carolan (SBN 154988)
   JASSY VICK CAROLAN LLP
2  400 Montgomery Street, Suite 200
   San Francisco, California  94104
3  Tel: (415) 539-3399
   Fax: (415) 539-3394
4  dcarolan@jassyvick.com

5  Jean-Paul Jassy (SBN 205513)
   Kevin L. Vick (SBN 220738)
6  6605 Hollywood Blvd., Suite 100
   Los Angeles, California 90028
7  Tel: (310) 870-7048
   Fax: (310) 870-7010
8  jpjassy@jassyvick.com
   kvick@jassyvick.com

9  Attorneys for Defendants
10 PROVIDENCE PUBLICATIONS, LLC, and
   J DALE DEBBER

11

12              UNITED STATES DISTRICT COURT

13             EASTERN DISTRICT OF CALIFORNIA

14                 SACRAMENTO DIVISION

15
   APPLIED UNDERWRITERS, INC., a          )  Case No.  2:15-cv-02445-GEB-CKD
16 Nebraska corporation,                  )
                                          )  **NOTICE OF MOTION AND MOTION OF**
17              Plaintiff,                 )  **DEFENDANTS PROVIDENCE**
                                          )  **PUBLICATIONS, LLC AND J DALE**
18 v.                                      )  **DEBBER TO DISMISS COMPLAINT;**
                                          )  **SUPPORTING MEMORANDUM OF**
19 LARRY J. LICHTENEGGER, J. DALE         )  **POINTS AND AUTHORITIES**
20 DEBBER, both Individuals, and          )
   PROVIDENCE PUBLICATIONS, LLC, a        )  [FED. R. CIV. P. 12(b)(6) & 12(c)]
21 California limited liability company,   )
                                          )  Date:  January 11, 2016
22              Defendants.                )  Time:  9 a.m.
                                          )  Courtroom: 10 (13th Floor) (Hon. Garland E.
23                                         )  Burrell, Jr., presiding)
                                          )
24                                         )  [Request for Judicial Notice with Exhibits 1-10,
                                          )  filed concurrently herewith]
25                                         )
                                          )  Complaint Filed: November 23, 2015
26 _____ )

27

28

TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on Monday January 11, 2016, at 9 a.m., or as soon thereafter as counsel may be heard before the Honorable Garland E. Burrell, Jr. in Courtroom 10 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, Defendants Providence Publications, LLC., and J Dale Debber will and hereby do move to dismiss the Complaint filed by Plaintiff Applied Underwriters, Inc. for federal trademark infringement (Count I), violation of the Lanham Act (Count II), unfair competition (Count III), federal trademark dilution (Count IV) and violation of California Business and Professions Code Section 17200, et. seq. (Count V).

This Motion is made on the grounds that the Defendants' use of Plaintiff's name and the name of its insurance program in the title of an educational seminar, disseminated through a webcast and DVD, about the Plaintiff's insurance services, and in related announcements about the seminar, does not provide a basis for liability.  Specifically:

1.      The federal trademark infringement (Count I), false designation of origin (Count II), unfair competition (Count III), and federal dilution (Count IV) claims fail because Defendants' reference to Applied Underwriters' EquityComp in the title of its seminar, on its website and in emails to announce the seminar about Applied Underwriters' EquityComp program is nominative fair use, which cannot give rise to liability for unfair competition, trademark infringement, false designation of origin or dilution under the Lanham Act;

2.      The First Amendment protects the Defendants' use of Applied Underwriters' EquityComp name in its expressive work unless (1) there is no artistic relevance to the underlying work whatsoever; and (2) the work "explicitly" misleads as to the source or content of the work. Since Plaintiff has not and cannot alleges facts sufficient avoid the First Amendment, its federal trademark infringement (Count I), false designation of origin (Count II), unfair competition (Count III) and federal dilution (Count IV) claims necessarily fail to state a claim upon which relief can be granted;

3.      The Lanham Act provides that a claim for trademark dilution expressly exempts any form of news reporting, commentary, fair use, and noncommercial uses; consequently, Plaintiff's

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

assertion of trademark dilution (Count IV) arising from Defendants' alleged use of Plaintiff's marks in the title of an educational seminar about Applied Underwriters' EquityComp program, and in advanced promotion of the educational seminar, is barred.  15 U.S.C. § 1125(c).  Separately, this claim fails because the Complaint does not allege facts sufficient to establish that Plaintiff's marks are famous under the high standards necessary to establish fame under the dilution statute. 15 U.S.C. § 1125(c)(2)(A).

4.    To the extent Plaintiff is alleging, or would seek leave to amend to so allege, a claim for false advertising under the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), the claim fails for lack of any allegation that Defendants made a false assertion of fact, because the speech at issue is not commercial speech and because the Complaint is devoid of facts necessary to confer standing to bring a false advertising claim under the standards set forth in Lexmark Intern, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014).   It also fails to state facts sufficient to survive a 12(b)(6) motion under the heightened pleadings standards applicable to actions alleging fraud, mistake or deception under Federal Rule of Civil Procedure 9(b).

5.    The unfair competition claim under California Business & Professions Code Section 17200 et al., (Count V) fails because it is predicated entirely on the same set of facts supporting the federal unfair competition and trademark infringement claims, and thus the same defenses and defects in pleading applicable to the federal claims serve to defeat this claim.

This Motion is based on this Notice; on the Memorandum of Points and Authorities; on concurrently-filed Request for Judicial Notice with Exhibits 1 to 10, and any other judicially-noticed materials; on all pleadings, files and records in this action and on such other argument or matters as may be received by the Court at the hearing on the Motion.

/////

/////

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

1        For these reasons, Defendants request that the Court grant this Motion, and dismiss

2   Plaintiff's Complaint in its entirety without leave to amend.[1]

3        Dated:  December 14, 2015                    JASSY VICK CAROLAN LLP

4                                                      /s/
                                                       _____
5                                                      Duffy Carolan
                                                       Attorneys for Defendants
6                                                      Providence Publications, LLC, and
                                                       J Dale Debber

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [1] Where, as here, a claim is barred as a matter of law, and the legal defect in the claim cannot be
     cured, dismissal without leave to amend is appropriate.  See, e.g., Cook, Perkiss & Leihe, Inc. v.
28   Northern Cal. Collective Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990) (dismissing Lanham Act
     false advertising claim without leave to amend).

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

# TABLE OF CONTENTS

I.      INTRODUCTION...............................................................................................1

II.     FACTUAL ALLEGATIONS.............................................................................3

III.    LEGAL ANALYSIS ..........................................................................................5

   A.   Dismissal at the Pleading Stage is Appropriate…………………………………….......... 5

   B.   Defendants' Use of the Applied Underwriter's EquityComp Name in Reference to an
        Informational Seminar about Plaintiff's EquityComp Services is Fully Protected Under the
        Nominative Fair Use Defense Applicable to Plaintiff's Federal Unfair Competition and
        Lanham Act Claims…………………………………………………………………..... 7

   C.   Plaintiff's False Designation of Origin Claim is Constitutionally Barred for Lack of
        Explicitly Misleading Statements Regarding Sponsorship…………………………………11

   D.   Plaintiff's Federal Dilution Claim Fails Because Defendants' Use of the Trademarks Falls
        Within Each Exception to the Dilution Statute and Because the Marks Are Not Famous
        within the Meaning of the Lanham Act……………………………………………….. 12

        1.  References to the Applied Underwriters' EquityComp Program in the Title of its
            Seminar and Related Promotional Materials are Expressly Exempt from the Dilution
            Statute. ........................................................................................................ 12

        2.  Plaintiff Has Not and Cannot Allege That Its Marks Are Famous Within the
            Meaning of the Lanham Act. .................................................................... 16

   E.   The Allegations Are Insufficient to State Any False Advertising
        Claim……………………………………………………………………………………17

   F.   Plaintiff's State Unfair Competition Claim (Bus. & Prof. Code § 17200) Fails For the Same
        Reasons Its Federal Unfair Competition and Trademark Infringement Claims Fail………...19

IV.     CONCLUSION…………………………………………………………………………19

TABLE OF AUTHORITIES

**Cases**

1 800 GET THIN, LLC v. Hilzik,
    2011 WL 3206486 (C.D. Cal. 2011) ............................................................................9

Abrego v. Dow Chem. Co.,
    443 F.3d 676 (9th Cir. 2006) ...................................................................................6

Aldrin v. Topps Company, Inc.,
    2011 WL 4500013 (C.D. Cal. 2011) ......................................................................15

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................................5, 6

Avery Dennison Corp. v. Sumpton,
    189 F.3d 868 (9th Cir. 1999) .................................................................................16

Bally Total Fitness Holding Corp. v. Faber,
    29 F. Supp. 2d 1161 (C.D. Cal. 1998) ..................................................................13

Barry v. Time, Inc.,
    584 F. Supp. 1110 (N.D. Cal.. 1984) .......................................................................6

Bell Atlantic Corp. v. Twombly,
    U.S. 544 (2007) ..................................................................................................5, 6

BidZirk, LLC v. Smith, 35 Media L. Rep.,
    2007 WL 3119445 (D.S.C. 2007) .........................................................................14

Bolger v. Youngs Drug Prods. Corp.,
    463 U.S. 60 (1983) ...............................................................................................15

Brown v. Electronic Arts, Inc.,
    724 F.3d 1235 (9th Cir. 2013) ...............................................................................12

Burnett v. Twentieth Century Fox,
    491 F. Supp. 2d 962 (C.D. Cal. 2007) ..............................................................6, 12

Cher v. Forum Int'l,
    692 F.2d 634 (9th Cir. 1982) .................................................................................15

Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,
    173 F.3d 725 (9th Cir. 1999) .................................................................................18

Comedy III Prod. v. New Line Cinema,
    200 F.3d 593 (9th Cir. 2000) .................................................................................12

Comedy III Prods., Inc. v. Gary Saderup, Inc.,
    25 Cal. 4th 387 (2001) ..........................................................................................15

Dombrowski v. Pfister,
    380 U.S. 479 (1965). ...............................................................................................6

Dorsey v. National Enquirer, Inc.,
    973 F.2d 1431 (9th Cir. 1992) .................................................................................6

E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,
    547 F.3d 1095 (9th Cir. 2008) ...............................................................................11

ETW Corp. v. Jireh Publ'g,
    332 F.2d 915 (6th Cir. 2003) .................................................................................11

Franchise Realty Interstate Corp. v. San Francisco Local Jt. Exec. Bd. of Culinary Workers,
    542 F.2d 1076 (9th Cir. 1976) .................................................................................6

ii

Grupo Gigante S.A. de C.V. v. Dallo & Co.
    391 F.3d 1088 (9th Cir. 2004)...................................................................................19

Gugliemi v. Spelling-Goldberg Prods.,
    25 Cal. 3d 860 (1979)...........................................................................................15

Hasbro, Inc. v. Clue Computing, Inc.,
    66 F. Supp. 2d 117 (D. Mass 1999).......................................................................16

Hasbro, Inc. v. Clue Computing, Inc.,
    232 F.3d 1 (1st Cir. 2000)......................................................................................16

Heartland Payment Systems, Inc. v. Mercury Payment Systems, LLC,
    2014 WL 5812294 (N.D. Cal. 2014)................................................................17, 18

Hilton v. Hallmark Cards,
    599 F. 3d 894 (9th Cir. 2009).................................................................................15

Ileto v. Glock,
    349 F.3d 1191 (9th Cir. 2003)..................................................................................5

In re Silicon Graphics Securities Litig.,
    183 F. 3d 970 (9th Cir. 1999)...................................................................................6

In re Syntex Corp. Sec. Litig.,
    95 F.3d 922 (9th Cir. 1996).......................................................................................5

J.K. Harris & Co. v. Kassel,
    253 F. Supp. 2d 1120 (N.D. Cal. 2003) ....................................................................8

Knievel v. ESPN,
    393 F.3d 1068 (9th Cir. 2005)..................................................................................7

L.L. Bean, Inc. v. Drake Publishers, Inc.,
    811 F.2d 26 (1st Cir. 1987)).....................................................................................7

Lexmark Intern, Inc. v. Static Control Components, Inc.,
    134 S. Ct. 1377 (2014). ...................................................................................17, 18

Mattel Inc. v. Walking Mt. Prods.,
    353 F.3d 792 (9th Cir. 2003)..............................................................................13, 14

Mattel, Inc. v. MCA Records,
    296 F.3d 894 (9th Cir. 2002)...............................................................................7, 11

Mead Data Central, Inc. v. Toyota Motor Sales, Inc.,
    875 F.2d 1026 (2d Cir. 1989).................................................................................16

Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Co.,
    82 U.S.P.Q. 2d 1583 (C.D. Cal. 2007)...................................................................16

New Kids on the Block v. News Am. Publications, Inc.,
    971 F. 2d 302 (9th Cir. 1992).....................................................................7, 8, 9, 10

Parrino v. FHP, Inc.,
    146 F. 3d 699 (9th Cir. 1998)...................................................................................6

Playboy Enters. v. Welles,
    279 F.3d 796 (9th Cir. 2002)....................................................................................9

Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020 n.10 (9th Cir. 2004) ..............19

Proctor & Gamble v. Haugen,
    222 F.3d 1262 (10th Cir. 2000)...............................................................................18

Radiance Foundation, Inc. v. N.A.A.C.P.,
    786 F.3d 316 (4th Cir. 2015)...................................................................................13

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

Rice v. Fox Broad. Co.,
  330 F.3d 1170 (9th Cir. 2003)..................................................................................15

Rogers v. Grimaldi,
  875 F.2d 994 (2d Cir. 1989)....................................................................................11

Toho Co., Ltd., Williams Morrow & Co., Inc.,
  33 F. Supp. 2d 1206 (C.D. Cal. 1998)....................................................................10

Top Tobacco, L.P. v. North Atlantic Op. Co.,
  509 F.3d 380 (7th Cir. 2007)...................................................................................16

Toyota Motor Sales, U.S.A. v. Tabari,
  610 F.3d 1171 (9th Cir. 2010).................................................................................8

Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.,
  964 F.Supp. 733 (S.D.N.Y. 1997)...........................................................................16

Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Research,
  527 F.3d 1045 (10th Cir. 2008)................................................................................7

Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,
  425 U.S. 748 (1976).................................................................................................15

Williams O'Neil & Co., Inc. v. Validea.com Inc.,
  202 F. Supp. 2d 1113 (C.D. Cal. 2002)...................................................................15

Winter v. D.C. Comics,
  30 Cal. 4th 881 (2003).............................................................................................6

Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.,
  809 F. Supp. 267 (S.D.N.Y. 1992)..........................................................................11

Yelp Inc. v. Catron,
  2014 WL 4966706 (N.D. Cal. Oct. 1, 2014)...........................................................19

**Statutes**

15 U.S.C. § 1125 (c)(2)(B)…………………………………………………….. 13

15 U.S.C. § 1125(a)(1)(A)…………………………………………………….. 5

15 U.S.C. § 1125(c)………………………………………………………….. 5

15 U.S.C. § 1125(c)(2)(A)…………………………………………………….. 16

15 U.S.C. § 1125(c)(2)(C)…………………………………………………….. 13

15 U.S.C. § 1125(c)(3)………………………………………………………. 13

15 U.S.C. § 1125(c)(3)(C)…………………………………………………….. 14

15 U.S.C. § 1125(c)(3)(B)…………………………………………………….. 14

Cal. Bus. & Prof. Code § 17200……………………………………………….5

Fed. R. Civ. Proc. 12(b)(6)…………………………………………………….5

Fed. R. Civ. Proc. 9(b)………………………………………………………..18

**Other Authorities**

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2015)  .....13, 14

## I.      INTRODUCTION

This action – cloaked as one for federal trademark infringement and unfair competition – is a thinly veiled attack on the free speech rights of a local publisher providing news, information, investigative journalism, data and educational seminars to a niche market of insurance brokers and carriers interested in the workers' compensation industry in California.  One of its educational seminars, published through a webcast and DVD, is about Plaintiff Applied Underwriters, Inc.'s insurance program called "EquityComp."   Defendant Providence Publications, LLC, through its on-line publication called Workers' Comp Executive, has extensively written about Plaintiff's program, including multiple ongoing lawsuits brought against Applied Underwriters for fraud in connection with its EquityComp program, lawsuits against brokers selling the program, the legality of its principle collateral agreement, which are not filed with or approved by the California Department of Insurance, among other things.  As set out in the Complaint, and attachments thereto, the seminar is titled "Applied Underwriters' EquityComp® Program Like it, Leave it, or Let it be?"  The subtitle of the seminar is "Learn the best strategies for selling, competing with, or helping a prospect out of EquityComp® mid-term."  The seminar has been approved for continuing education credit both by the California State Bar and the California Department of Insurance.

Though plain from the seminar's title and subtitle, the planned content of the seminar, set out in emails to prospective attendees (see, e.g., Ex. B to Complaint ("Cmpt.")), makes it abundantly clear that Applied Underwriters is not a sponsor of Providence's seminar, i.e., "If you have a client in the program who is unhappy, should you get them out and if so, how to know when?"

Nevertheless, Plaintiff lodges the instant suit claiming use of its service marks – APPLIED UNDERWRITERS and EQUITYCOMP – in the title of Providences' planned seminar, and on its webpage and in emails announcing the seminar, creates the false impression of sponsorship and violates its registered trademarks.  Each of the claims, including the state unfair business practices claim, fails as a matter of law.  Courts and the United States Congress has made abundantly clear that trademark laws cannot be used as a sword to prevent commentary or criticism about the goods or services of another.  Indeed, the Ninth Circuit Court of Appeal in New Kids on the Block v. News Am. Publications, Inc., 971 F.2d 302, 308 (9th Cir. 1992), made clear that nominative uses of

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

another's mark – that is, use of a mark to identify or refer to the mark holder's product or service – fall outside of the Lanham Act.  Because Providence's use of Plaintiff's name and the name of its insurance program fall squarely under the nominative fair use defense, each of Plaintiff's claims must be dismissed without leave to amend.  Separately, as an expressive work, the First Amendment protects Providence's use of Plaintiff's name and the names of its insurance program because such use is clearly relevant to the underlying work and because there is no "explicit" effort to mislead consumers into believing Plaintiff is sponsoring the seminar.  Plaintiff's federal dilution claims under the Lanham Act also fail because any reference to Plaintiff's marks fall under each of the statutory defenses to the anti-dilution statute – fair use, news reporting and news commentary and noncommercial use – and because Plaintiff has failed to allege sufficient facts to meet the high standard required to establish its marks as have achieved household recognition throughout the United States, as opposed to the niche market it serves.

Though the Complaint falls short of alleging a false advertising claim under the second prong of the Lanham Act, which must meet the heightened pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure, to the extent such a claim was intended to be alleged, it too fails.  Providence's seminar is not commercial speech, Plaintiff has not alleged or identified any false statement of fact, and Plaintiff lacks standing to sue for false advertising under the Lanham Act because it can show no losses to its business from diversion of sales or economic injury to its reputation flowing from Providence's use of its marks as opposed to its fully protected speech.

The real intent behind this sham Complaint should be apparent.  Plaintiff is trying to intimidate and chill the valid exercise of protected speech that it perceives to be critical of its services.[2]  The Court should not countenance misuse of the trademark and unfair competition laws in this manner.  Instead, the Complaint should be dismissed in its entirety and without leave to amend.

---

[2] That Plaintiff filed the Complaint on the eve of the Thanksgiving holiday and then attempted to notice a TRO for the following Monday, November 30, 2015, though it admittedly had known about the seminar since early November, and that it named as a defendant an attorney who is one of the presenters of the seminar but is otherwise not associated with Providence Publications, LLC, and who has represented several plaintiffs in actions adverse to Applied Underwriters is telling enough.

2

## II.    FACTUAL ALLEGATIONS

This action purportedly stems from the use of Plaintiff's trademarks – APPLIED UNDERWRITERS and EQUITYCOMP – in the title of an educational seminar, published via a webcast and DVD, being presented by Defendants on December 9th, 2015, and on Defendants' website and in emails announcing the seminar.  Cmpt., ¶¶ 23, 24 & Ex. B to Cmpt. [Dkt. 1 and 1-2]; see also Ex. 1 to RJN (DVD copy of webcast).  Plaintiff is a "financial services company" that "offers programs through which workers' compensation insurance is offered and provided to employers throughout the United States…"   It is "an indirect subsidiary of Berkshire Hathaway, Inc."  Id., ¶ 10.  Plaintiff has used the trademarks in commerce since March 2001 and October 2002, respectively, "in connection with Applied Underwriters' providing of certain financial services relating to insurance and employee benefit plans to the public."  Id., ¶¶ 2,3,5.  Its "customers are independent brokers and their clients, which are business organizations that use the insurance services offered by Applied Underwriters and its affiliates."  Id., ¶ 16.  Plaintiff has registered its marks with the United States Patent and Trademark Office, obtaining in 2002-2004 various service marks under Class 36 for "financial services for business, namely, administration of insurance and employee benefit plans for business organizations."  Id., ¶ 17 & Ex. A to Cmpt.

Plaintiff alleges that its marks are "famous and distinctive as a source identifier" in connection with its services, and that it spent "nearly $4 million to advertise its APPLIED UNDERWRITERS and/or EQUITYCOMP marks and the services offered in connection therewith." Id., ¶ 19 (emphasis added).

Defendant Providence Publications, LLC, publishes on-line news and information to a wide-variety of niche markets, through newsletters, video news, databases, and on-line seminars.  See Cmpt., ¶¶ 13, 24 (citing homepage of Providence Publications, Inc. and Workers' Comp Executive); see also RJN, Ex. 2 (homepage of Providence Publications, Inc. at www.provpubs.com).  It provides timely news written by award winning professional journalists.  Id.  One of its publications – Workers' Comp Executive ("WCE") – at issue here, has been in existence since 1991, and covers the workers' compensation industry in California, providing news and original content written by professional journalists.  RJN, Ex. 3 (About Us page of WCE at

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

www.wcexec.com/About_WCExec.aspx).  It has extensively written about Plaintiff's insurance program EquityComp, including about the rates and plans used by Applied Underwriters, lawsuits brought against Applied Underwriters in connection with its EquityComp program, its Reinsurance Participation Agreement and related legal proceedings brought by employers challenging the legality of this agreement, among other matters.  RJN Exs. 4-9.  It publishes 22 times per year in PDF format through a subscription.  Id., Ex. 3.  WCE also publishes "FLASH Reports" through email distribution covering major breaking news, such as court filings, major decisions and rate filings, and "News Digests," covering workers' comp news from around the nation and world.  Id.

Additionally, WCE offers on-line seminars covering "newsworthy, timely and compliance-related topics," with "subject matter experts."  Id., Ex. 10 (www.provpubs.com/webcasts/).  The seminar at issue here, which Plaintiff alleges infringed the APPLIED UNDERWRITERS and EQUITYCOMP marks [Cmpt., ¶ 23], used the name "Applied Underwriters' EquityComp" in the title of the program – "Applied Underwriters' EquityComp® Program Like it, Leave It or Let it be?" Id., Ex. B.  And it used the EquityComp name in the subtitle of the program – "Learn the best strategies for selling, competing with, or helping a prospect out of EquityComp® mid-term."  Id. An email sent out announcing the program explains what participants "will learn," and includes a bullet point list.  Id.  Some of the topics included in the list are: "What you must know and do before you sell the program"; "Is the Reinsurance Participation Agreement legal in California?"; "Is EquityComp a loss sensitive program?"; "If you have a client in the program who is unhappy, should you get them out and if so, how to know when?"; and "How to compete against the program – at the start and mid-term."  Id.

Down the side of the email announcing the seminar is information about the presenters.  Id. Defendant Larry J. Lichtennegger is described as an attorney who for 15 years has specialized in investment and commercial fraud recovery and who represents "a panoply of employers vs. Applied and is well versed in their math and how their program works."  Id.  Defendant J Dale Debber is described as the publisher of Workers' Comp Executive and as the person "who broke the recent spate of stories about Applied Underwriters' EquityComp Program."  Id.  The seminar is approved

for continuing education credit both by the California Department of Insurance and the California State Bar.  See Ex. B to Cmpt.

It is against this backdrop that Plaintiff has brought the instant suit, fashioning it as a trademark infringement and unfair competition action.  Specifically, Plaintiff alleges that Defendants' use of its service marks constitute federal trademark infringement (Count I), false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II), unfair competition (Count III) , dilution through tarnishment and bluring under the Lanham Act, 15 U.S.C. § 1125(c) (Count IV) and unfair business practices under California Business and Professions Code Section 17200 et seq. (Count V).  It seeks to preliminarily and permanently enjoin Defendants from using its marks in its webcast, DVD and related advertising materials, disgorgement of profits, damages and other relief.  Cmpt. at p. 10.  Because the use of Plaintiff's marks are completely protected under the First Amendment, constitute nominative fair use, fall squarely under each of the statutory defenses to a federal dilution claim, and because the threadbare allegations fall far short of that required to cross the threshold from possible to plausible, Defendants bring the instant motion to dismiss, which should be granted without leave to amend.

## III.    LEGAL ANALYSIS

### A.    Dismissal at the Pleading Stage is Appropriate.

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claim.  Dismissal is warranted if no relief could be granted under any set of facts that could be proved consistent with the allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  In making this determination, the court is not required to construe "conclusory allegations of law and unwarranted inferences" in favor of the nonmoving party.  See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996); Ileto v. Glock, 349 F.3d 1191, 1200 (9th Cir. 2003) (a court should "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations.").  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Id. (citing

1    *Twombly*, 550 U.S. at 555).  Nor does a complaint suffice it if offers "naked assertion[s]" devoid of

2    "further factual enhancement."  *Id.* (citing *Twombly*, 550 U.S. at 557).

3           Stricter standards also must be applied at the pleading stage to claims, like those asserted by

4    Plaintiff, that arise from the exercise of First Amendment rights.  As the United States Supreme

5    Court has noted, "[t]he chilling effect upon the exercise of First Amendment rights may derive from

6    the fact of the prosecution, unaffected by the prospects of its success or failure."  *Dombrowski v.*

7    *Pfister*, 380 U.S. 479, 487 (1965).  Accordingly, the Ninth Circuit has recognized the need for more

8    specific pleading in cases that threaten to chill First Amendment rights, and has affirmed the

9    dismissal of claims that fail to meet this exacting standard.  *See*, *e.g.*, *Franchise Realty Interstate*

10   *Corp. v. San Francisco Local Jt. Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir.

11   1976) (in cases involving First Amendment rights, "the danger that the mere pendency of the action

12   will chill the exercise of First Amendment rights requires more specific allegations than would

13   otherwise be required"); *see also* *Barry v. Time, Inc.*, 584 F. Supp. 1110, 1121 (N.D. Cal.. 1984)

14   (noting "the potential chilling effect of harassing litigation concerning the first amendment," in

15   granting motion to dismiss on grounds that allegations of actual malice were not plead "with

16   sufficient specificity").  Where, as here, a defendant's First Amendment rights are implicated,

17   dismissal at the pleading stage is favored.  *See*, *e.g.*, *Dorsey v. National Enquirer, Inc.*, 973 F.2d

18   1431, 1435 (9th Cir. 1992) ("speedy resolution" at the "earliest stage" of a case is essential for cases

19   involving the First Amendment to avoid chilling expression); *Winter v. D.C. Comics*, 30 Cal. 4th

20   881, 891 (2003) (same).

21          In ruling on a motion to dismiss, this Court may consider not only the Plaintiff's allegations,

22   but also materials on which the complaint necessarily relies, even if not attached to the complaint.

23   *Parrino v. FHP, Inc.*, 146 F. 3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds,

24   *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *see also* *In re Silicon Graphics*

25   *Securities Litig.*, 183 F. 3d 970, 986 (9th Cir. 1999) (under federal rules, court may consider

26   documents "whose contents are alleged in the complaint and whose authenticity no party questions"

27   even where plaintiff does not attach the documents to the complaint).  For example, in *Burnett v.*

28   *Twentieth Century Fox*, 491 F. Supp. 2d 962, 973 (C.D. Cal. 2007), the court granted defendants'

motion to dismiss plaintiff's Lanham Act claim after reviewing television program that formed the basis of the lawsuit.  This also includes "internet pages as it does … printed material." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

Plaintiff claims purport to arise from Defendants' use of the term "Applied Underwriter's EquityComp" in describing an educational seminar Defendants are offering through a webcast and DVD, and which it is promoting through emails and on its website at www.wcexec.com and www.provpubs.com.  Thus, judicial notice of Defendants' publications and webpages, referenced in the Complaint, is appropriate.

> **B.**   **Defendants' Use of the Applied Underwriter's EquityComp Name in Reference to an Educational Seminar about Plaintiff's EquityComp Services is Fully Protected Under the Nominative Fair Use Defense Applicable to Plaintiff's Federal Unfair Competition and Lanham Act Claims.**

"[T]he primary focus of trademark law has been misappropriation – the problem of one producer's placing his rival's mark on this own goods." New Kids on the Block v. News Am. Publications, Inc., 971 F. 2d 302, 305 (9th Cir. 1992).  Because of the potential threat to constitutionally protected speech, Congress and reviewing courts have made quite clear that "the Lanham Act is intended to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses." Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Research, 527 F.3d 1045, 1052 (10th Cir. 2008) (internal quotation marks and citations omitted).  As the Ninth Circuit has explained, "[t]he First Amendment may offer little protection for a competitor who labels its commercial good with a confusingly similar mark, but 'trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'" Mattel, Inc. v. MCA Records, 296 F.3d 894, 900 (9th Cir. 2002) (quoting L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 29 (1st Cir. 1987).

In particular, "nominative uses" of a trademark, i.e., use of a mark to identify or refer to the mark holder's product or service, do not give rise to any cause of action under trademark law. Nominative uses thus fall outside the scope of activities prohibited by the Lanham Act.  The Ninth Circuit acknowledged these bedrock trademark principles in New Kids, 971 F.2d 302, and held that

7

a permissible, nominative use of another's mark exists where (1) the product or service in question

is not readily identifiable without use of the trademark; (2) only so much of the mark or marks is

used as is reasonably necessary to identify the product or service; and (3) the user does nothing that

would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

Id. at 308.  "[I]f the nominative use satisfies the three-factor News Kids test, it doesn't infringe."

Toyota Motor Sales, U.S.A. v. Tabari, 610 F.3d 1171, 1176 (9th Cir. 2010).

In New Kids, the plaintiffs – a rock band – asserted two newspapers had violated the band's

trademark rights in its name by using it in a poll and in articles publishing the results of the poll.

971 F.2d at 304.  The poll asked the public to vote for their favorite New Kids band member by

calling a 900 number, for which consumers were charged fifty cents per call.  Id.  The band claimed

that use of its trademark implied that it sponsored or approved the poll, and therefore constituted

trademark infringement, unfair competition, and false advertising.  Id. at 308.

The Ninth Circuit rejected all of the band's claims, finding that the newspapers' use of the

NEW KIDS trademark fell outside the scope of any conduct prohibited by the trademark laws.  Id. at

308-09.  As the court explained, "[i]t is no more reasonably possible … to refer to the New Kids as

an entity than it is to refer to the Chicago Bulls, Volkswagens or the Boston Marathon without using

the trademark."  Id. at 308.  Nothing about the poll falsely claimed, or even suggested, that the band

sponsored or endorsed the poll; as the court held, the newspapers' "use of the trademark does not

imply sponsorship or endorsement of the product because the mark is used only to describe the

thing, rather than to identify its source."  Id. at 306 (emphasis added).[3]

Similarly, in J.K. Harris & Co. v. Kassel, 253 F. Supp. 2d 1120, 1127 (N.D. Cal. 2003), the

court followed the New Kids decision in finding that a competitor's use of a service trademark name

when criticizing the plaintiff's services on its website was nominative fair use.  The court found that

---

[3] Although the New Kids plaintiffs did not allege dilution (the claim was not added to the Lanham Act until 1995), nominative uses are no more actionable under this section of the Act than those sections at issue in New Kids.  Playboy Enters. v. Welles, 279 F.3d 796, 804 (9th Cir. 2002) ("[w]e hold that nominative uses, by definition, do not dilute the trademarks"); see also 15 U.S.C. § 1125(c)(4)(A) (recognizing that it is a "fair use" to use "famous mark by another person in comparative commercial advertisement or promotion to identify the competing goods or services of the owner of the famous mark").  "Uses that do not create an improper association between a mark and a new product but merely identify the trademark holder's products should be excepted from the reach of the anti-dilution statute.  Such uses cause no harm."  Welles, 279 F.3d at 806.

the defendant used the plaintiff's mark solely "in order to make statements about it. … [Such]

referential use … is exactly what the nominative use doctrine is designed to allow." Id.  See also

Playboy Enters. v. Welles, 279 F.3d 796, 802-03 (9th Cir. 2002) (upholding right of former Playboy

Playmate to use Playboy's trademarks in a nominative sense on her website; such use of the marks

did not suggest endorsement or sponsorship by Playboy); 1 800 GET THIN, LLC v. Hilzik, 2011

WL 3206486, * 3 (C.D. Cal. 2011) (newspaper's use of plaintiff's trademark "1 800 GET THIN" in

news articles to refer to plaintiff's own marketing services and not to their own products or services

found to be  nominative fair use).

Like the criticism of plaintiff's services on defendant's website in J.K. Harris and the paid

poll and subsequent newspaper articles in New Kids, reference to Applied Underwriter's

EquityComp services in Defendant's webcast, DVD, and related materials to promote the

educational seminar, are fully protected under the nominative use defense because the program is

about Plaintiff's insurance services.  This is clear from the title of the program – "Applied

Underwriters' EquityComp® Program – Like it, Leave it, or Let it be?" – as well as from the

subtitle – "Learn the best strategies for selling, competing with, or helping a prospect out of the

EquityComp® mid-term."  Ex. B to Cmpt; see also Ex. 1 to RJN.  It is also clear from the proposed

content of the webcast, which includes bullet points about what participants will learn through the

webcast, such as "What you must know and do before you sell the program"; "Is the Reinsurance

Participation Agreement legal in California?"; "Is EquityComp a loss sensitive program?"; and

"How to compete against the program – at the start and mid-term."  Id.

Defendants' use of Plaintiff's marks satisfies the New Kids' three-factor test.  First, given

that Defendants' informational seminar is about a specific insurance program, EquityComp, offered

by Plaintiff, Applied Underwriters, the webcast is not readily identifiable to brokers and agents

without reference to Plaintiff's service marks—"Applied Underwriters" and "EquityComp."  Use of

a generic identifier for Defendants' informational webcast would no more suffice as a reference to

the program than would use of an entity name to refer to the band "New Kids."  971 F.2d at 308 ("It

is no more reasonably possible, however, to refer to the News Kids as an entity than it is to refer to

the Chicago Bulls, Volkswagen or the Boston Marathon without using the trademark.  Indeed, how

could someone not conversant with the proper names of the individual New Kids talk about the group at all?").  It is just not possible to put on a seminar discussing and critiquing Plaintiff's program without referencing the program by name.  Second, Defendants used no more of Plaintiff's trademark rights than necessary to convey the message that they were presenting an informational seminar about Plaintiff's insurance program.  It used solely the name of Plaintiff's company and the name of its program.  It did not use its distinctive lettering, its service marks or trade dress.  Ex. B of Cpt. [Dkt. 1-2 at 2]; Cf. New Kids, 971 F.2d at 308 n. 7 ("[A] soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering."); Toho Co., Ltd., Williams Morrow & Co., Inc., 33 F. Supp. 2d 1206, 1209 (C.D. Cal. 1998) (finding this requirement not met because the defendant employed the plaintiff's distinctive lettering style).  Third, setting aside conclusory allegations in the Complaint [¶¶ 26, 27], Defendants did nothing to suggest sponsorship or endorsement by Plaintiff of its webcast.  Indeed, a reasonable consumer of insurance products would know from the title and subtitle of the seminar alone that Plaintiff would not sponsor a program designed to help an insured "leave" or to "help a prospect out of EquityComp mid-term."  Ex. B to Cmpt.  Nor would a reasonable consumer be lead to believe that the Plaintiff is sponsoring or is associated with a seminar where that seminar is promoted as "controversial" and as raising questions about the efficacy and legality of Plaintiff's program.  Id.  Moreover, the main presenter of the program – attorney Larry Lichtenegger – is touted as having represented several employers in litigation adverse to Plaintiff.  Similarly, presenter Publisher J Dale Debber is promoted as having "broken the recent spate of stories about Applied Underwriters' Equity Comp Program."  Id.  In context, Defendants' promotion of the seminar, attached to the Complaint, fully dispels any association, sponsorship or implied endorsement by Plaintiff.

In sum, Defendants' reference to the "the Applied Underwriters' EquityComp" name in the title of its seminar, and on its website and in emails announcing the seminar, is fully protected under the nominative use defense.  As such, Defendants' alleged use of Plaintiff's trademarks cannot support Plaintiff's Trademark Infringement (Count I), Lanham Act (Count II), Unfair Competition (Count III), and Federal Trademark Dilution claims (Count IV).

### C.    Plaintiff's False Designation of Origin Claim is Constitutionally Barred for Lack of Explicitly Misleading Statements Regarding Sponsorship.

The First Amendment does not permit Lanham Act claims arising from expressive works unless there is some kind of an express endorsement contained in the publication.  As the Ninth Circuit has explained, the likelihood of confusion test typically used to evaluate trademark claims involving false endorsement or false designation of origin "fails to account for the full weight of the public's interest in free expression."  Mattel, Inc. v. MCA Records, 296 F.3d 894, 900 (9th Cir. 2002).[4]   To ensure these First Amendment concerns are properly accommodated, the Ninth Circuit has adopted the two-part test established by the Second Circuit in Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), which held that a Lanham Act claim based on the use of a plaintiff's mark in an expressive work is barred by the First Amendment unless the plaintiff can establish that (1) the use "has no artistic relevance to the underlying work whatsoever," and, (2) if it has some artistic relevance, the use "explicitly misleads as to the source or content of the work."  Mattel, 296 F.3d at 902.[5]

Here, Defendants' reference to "Applied Underwriters' EquityComp" program is clearly relevant to Defendants' informational seminar about Plaintiff's insurance program.  Moreover, nothing in the Complaint alleges or can allege that Defendants' statements are "explicitly misleading" under the second prong of the Rogers/Mattel test, which requires an affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of Plaintiff's

---

[4] See also ETW Corp. v. Jireh Publ'g, 332 F.2d 915, 926-28 (6th Cir. 2003) (likelihood of confusion test is not appropriate "where the defendant has articulated colorable claim that the use of a celebrity's identity is protected by the First Amendment" because the test "fails to adequately consider the interests protected by the First Amendment"); Yankee Publ'g, Inc. v. News Am. Publ'g, Inc., 809 F. Supp. 267, 276 (S.D.N.Y. 1992) ("when unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right").

[5] In Rogers, the Second Circuit rejected a Lanham Act false endorsement claim brought by dancer and actress Ginger Rogers based on the use of her name in the title of the film "Ginger and Fred." The film was not about Ginger Rogers and Fred Astaire, it was about two fictional Italian cabaret performers who imitated Rogers and Astaire and became known in Italy as "Ginger and Fred."  875 F.2d at 996-997.  In Mattel, the Ninth Circuit similarly rejected a false endorsement claim based on Mattel's Barbie mark in the title of a song by the Danish band Aqua called "Barbie Girl."  296 F.3d at 901-02. See also E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095, 1096-99 (9th Cir. 2008) (extending Rogers test beyond use of trademarks in titles of expressive works and applying it to use of mark in body of video game where virtual depiction of city included strip club's logo in holding that use was protected under First Amendment).

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

trademark, name or other characteristic.[6]  Rather, as the attached "infringing offering" itself shows, Defendants' published statements make clear that Plaintiff is not a sponsor by characterizing Plaintiff's program as "controversial," by stating the webcast will help brokers and agents learn how to sell, compete with or help prospects out of the EquityComp program and by introducing the speakers as individuals who have been instrumental in exposing this controversial program through litigation and news reporting.  Ex. B to Cmpt.  Defendants' published statements do not remotely – much less explicitly – mislead the public into believing Plaintiff endorsed the seminar.  Thus, any false designation of origin claim is constitutionally barred, and should be rejected as a matter of law.[7]

      **D.**    **Plaintiff's Federal Dilution Claim Fails Because Defendants' Use of the Trademarks Falls Within Each Exception to the Dilution Statute and Because the Marks Are Not Famous within the Meaning of the Lanham Act.**

           **1.**    **References to the Applied Underwriters' EquityComp Program in the Title of its Seminar and Related Promotional Materials are Expressly Exempt from the Dilution Statute.**

      Plaintiff claims that Defendants' use of its trademarks "dilute, tarnish, blur and detract from the distinctiveness of Applied Underwriters' famous mark…"  Cmpt. ¶ 43.  As an initial matter, apart from the fully protected commentary and criticism of Plaintiff's services, as explained below, the Complaint fails to allege any facts as to how Defendants' use of its marks in the title of its seminar blurs or tarnishes its trademarks within the meaning of the dilution statute.  Id.  It is not enough merely to employ the buzz words "dilute, tarnish, blur and detract."  "[D]ilution by bluring" requires the plaintiff to show an "association arising from the similarity between a mark or trade

---

[6] As the Ninth Circuit explained in Mattel, if the only alleged basis for a claim of sponsorship or endorsement is the inclusion of the plaintiff's mark in the defendant's expressive work, the plaintiff necessarily fails to satisfy the second prong of the Rogers test.  Id. at 902; see also Brown v. Electronic Arts, Inc., 724 F.3d 1235, 1239, 1248 (9th Cir. 2013) (affirming dismissal of NFL football player's Lanham Act claim for false endorsement under Rogers test where facts alleged inclusion of marks in products generally caused consumer confusion but failed to allege that defendant explicitly mislead consumers about NFL Football player's involvement).

[7] Other courts have not hesitated to dismiss Lanham Act claims, especially where the defendant's expressive work is before the court on a Rule 12(b)(6) motion.  See, e.g., Brown, 724 F.3d at 1248 (affirming dismissal appropriate where only general consumer confusion alleged); (Comedy III Prod. v. New Line Cinema, 200 F.3d 593, 596 (9th Cir. 2000) (granting motion to dismiss Lanham Act and state law claims based on use of a public domain film featuring The Three Stooges within a motion picture); Burnett v. Twentieth Century Fox, 491 F. Supp. 2d 962, 972-973 (C.D. Cal. 2007) (granting motion to dismiss Section 42(a) claim based on animated television show's parody of actress Carol Burnett).

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125 (c)(2)(B). "[D]ilution by tarnishment" requires the plaintiff to show an "association arising from the similarity between a mark or trade name and [plaintiff's mark] that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Blurring or tarnishment caused merely by criticism or commentary about a plaintiff's products or services "is not actionable … because of the free speech protections of the First Amendment …." <u>Mattel Inc. v. Walking Mt. Prods.</u>, 353 F.3d 792, 812 (9th Cir. 2003). Thus, "a dilution action applies only to purely commercial speech." <u>Id.</u>

The 2006 Trademark Dilution Revision Act expressly prohibits dilution claims for "[a]ny fair use, including nominative … fair use," … including use in connection with … "criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner"; "[a]ll forms of news reporting and news commentary"; and "[a]ny noncommercial use of a mark." 15 U.S.C. § 1125(c)(3).

Defendants' use of Plaintiff's name and the name of its insurance program fall squarely within all three exceptions. <u>First</u>, as explained above, Defendants' seminar about Plaintiff's insurance program falls within the nominative fair use defense. Separately, its seminar constitutes expressive criticism and commentary about Plaintiff's services. "This safe harbor is obviously intended to accommodate the interest of using famous marks in free speech and expression. … For example, it is not appropriate to use the antidilution law as a weapon against criticism of a company on the Internet, as with the use of the "yourcompanysucks" type of domain name for consumer Web sites devoted to criticizing the acts and policies of 'Your Company.'" 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2015) § 24:126 (citing <u>Bally Total Fitness Holding Corp. v. Faber</u>, 29 F. Supp. 2d 1161 (C.D. Cal. 1998) (holding that use of the domain name "ballysucks" for a website criticizing the policies of the BALLY health club is not a violation of the Antidilution Act)). "Trademark law in general and dilution in particular are not proper vehicles for combating speech with which one does not agree. Trademarks do not give their holders under the rubric of dilution the rights to stymie criticism." <u>Radiance Foundation, Inc. v. N.A.A.C.P.</u>, 786 F.3d 316, 332 (4th Cir. 2015) (holding that use of the NAACP's mark in the body

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

1    of on-line articles criticizing the NAACP's perceived position on abortion was both a fair use and a

2    non-commercial use exempted by the anti-dilution statute).

3          Here, Defendants' seminar about Plaintiff's insurance services provides important

4    information to consumers about the agreements utilized by Applied Underwriters, the legality of

5    those agreements, its practices relative to paying claims, costs of the program and liability issues for

6    brokers who sell the program to employers, among other things.  Ex. B to Cmpt.  This type of

7    criticism and commentary falls squarely with the exception to the dilution statute.

8          Second, the webcast also constitutes news commentary.  15 U.S.C. 1125(c)(3)(B); 5

9    McCarthy § 24:127 ("[t]his category of exempted uses seems self-explanatory and was inserted to

10   assure the media that the federal dilution law would not be used as a weapon against media use of

11   trademarks in the context of conveying news and other forms of socially useful information").  This

12   subdivision has been held to apply to criticism of a plaintiff's service on an Internet blog.  BidZirk,

13   LLC v. Smith, 35 Media L. Rep., 2007 WL 3119445 (D.S.C. 2007).  Here, the criticism and

14   commentary comes in the form of an educational seminar published via a webcast by a news

15   organization specializing in news and information of interest to employers and others in the workers

16   compensation industry, including brokers who sell insurance services to employers.  Cmpt. ¶ 25;

17   RJN Ex. 1-3, 10.  It also comes at a time when the legality of Plaintiff's insurance services are under

18   judicial review in a number of actions against Plaintiff and independent brokers who have been sued

19   by employers after selling those services – matters which have been part of Defendants' ongoing

20   news coverage.  See, e.g., RJN 4-9.

21         Third, Defendants' use of Plaintiff's marks fall squarely within the noncommercial use

22   exemption.  15 U.S.C. § 1125(c)(3)(C); see, e.g., MCA Records, Inc., 296 F.3d 894 (use of the

23   BARBIE trademark in a song and in its title was not actionable under the dilution laws); Walking

24   Mountain Prods, 353 F.3d 792 (photographs parodying BARBIE doll did not tarnish the BARBIE

25   image); Burnett, 491 F. Supp. 2d 962 (dismissing dilution claim against a television cartoon parody

26   of performer Carol Burnett because speech was noncommercial).  Defendants are presenting an

27   informational seminar about Plaintiff's insurance services in which attendees will receive continuing

28   education credits approved by the State Bar and the California Department of Insurance.  Ex. B to

14

Cmpt.  That Defendants' have promoted this educational seminar in advance on its website and in emails [Cmpt. ¶¶ 23, 24] does not convert its protected activities into commercial speech.[8]  As the Ninth Circuit has held, the constitutional protection for an expressive work "extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication."  Cher v. Forum Int'l, 692 F.2d 634, 639 (9th Cir. 1982).  The California Supreme Court has agreed, explaining in Gugliemi v. Spelling-Goldberg Prods. that "[s]ince the use of Valentino's name and likeness in the film was not an actionable infringement of [his] right of publicity, the use of his identity in advertisements for the film is similarly not actionable."  25 Cal. 3d 860, 862-63 (1979) (emphasis added).  The court reasoned that "[i]t would be illogical to allow respondents to [engage in protected activity] but effectively preclude any advance discussion or promotion of their lawful enterprise.");  see also Aldrin v. Topps Company, Inc., 2011 WL 4500013 (C.D. Cal. 2011) (holding that cardboard packaging depicting image of Astronaut Buzz Aldrin in the famous Apollo 11 moon landing was mere adjunct to fully protected trading cards depicting well-known politicians, actors, athletes and astronauts, including Aldrin, and including historically significant information about their achievements); Williams O'Neil & Co., Inc. v. Validea.com Inc., 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (defendants' use of plaintiff's name on a "book cover, flyleaf, and other material" promoting book was "protected to the same extent as the book").

Similarly, "[a]n expressive activity does not lose its constitutional protection because it is undertaken for profit."  Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 396 (2001).  As the Ninth Circuit recognized, the mere fact that a product is sold for a profit does not render the product commercial speech.  Hilton v. Hallmark Cards, 599 F. 3d 894, 905 n. 7 (9th Cir. 2009).  Thus, that Defendants will sell the DVD or promote the webcast in advance does not take Defendants' speech outside of the protections of the First Amendment.

---

[8] Commercial speech does "no more than propose a commercial transaction."  Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66 (1983) (quoting Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 762 (1976)); Rice v. Fox Broad. Co., 330 F.3d 1170, 1181 (9th Cir. 2003) (same).

15

**2.     Plaintiff Has Not and Cannot Allege That Its Marks Are Famous Within the Meaning of the Lanham Act.**

Plaintiff's federal dilution claim is independently barred because it has not and cannot allege a key requirement for such claims, namely, that its marks are "famous."  The federal dilution statute, 15 U.S.C. § 1125 (c), only provides for relief against a third party's commercial use of a mark if the use causes blurring or tarnishment of a "famous" mark.  To be considered "famous" under the statute, the mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A); <u>see</u> <u>Top Tobacco, L.P. v. North Atlantic Op. Co.</u>, 509 F.3d 380, 384 (7th Cir. 2007) (the 2006 amendments to the Lanham Act, including the dilution section, "eliminated any possibility of 'niche fame'"); 5 McCarthy, § 24:67 ("[t]he antidilution remedy was intended to apply only in unusual and extraordinary cases [and] be reserved for a small, elite group of truly renowned marks").  As the Ninth Circuit explained, "by carefully limiting the class of trademarks eligible for dilution protection, Congress … granted the most potent form of trademark protection in a manner designed to minimize undue impact on other uses."  <u>Avery Dennison Corp. v. Sumpton</u>, 189 F.3d 868, 875 (9th Cir. 1999).

Marks that are deserving of recognition under the anti-dilution statute have a degree of fame that cause consumers to associate them with the company that owns the mark.  Even a mark that is familiar to some people may not have the requisite degree of fame.  <u>See</u> <u>Mead Data Central, Inc. v. Toyota Motor Sales, Inc.</u>, 875 F.2d 1026 (2d Cir. 1989) (applying New York anti-dilution statute and concluding that LEXIS for a legal research system lacked fame); <u>Hasbro, Inc. v. Clue Computing, Inc.</u>, 66 F. Supp. 2d 117, 131-32 (D. Mass 1999) (CLUE, a mark used on a board game, lacked fame in part because the word "clue" is common), <u>aff'd</u> 232 F.3d 1 (1st Cir. 2000); <u>Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.</u>, 964 F.Supp. 733, 750 (S.D.N.Y. 1997) (COLUMBIA not a famous mark).  In other words, the degree of fame must be such that the mark is a "household name."  <u>Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Co.</u>, 82 U.S.P.Q. 2d 1583, 1587 (C.D. Cal. 2007) (Milbank not a household name).

Here, Plaintiff has not and cannot allege facts sufficient to meet the extraordinarily high standard for fame under the Lanham Act.  Rather, it has made vague, conclusory allegations that it

has spent "$4 million to advertise its APPLIED UNDERWRITERS <u>and/or</u> EQUITYCOMP marks <u>and</u> the services offered in in connection therewith."  Cmpt. ¶ 19.  And that its marks are "famous and distinctive as a source identifier in connection with Applied Underwriters' providing services relating to workers' compensation insurance and employee benefit plans."  <u>Id.</u>, ¶ 20.  Given the niche market in which the marks are used, and the absence of any facts supporting a determination that Plaintiff's marks are household names throughout the United States, these allegations fail to state a claim for dilution of a famous mark under the Lanham Act.

### E.      The Allegations Are Insufficient to State Any False Advertising Claim.

The Lanham Act creates two distinct bases of liability: false association and false advertising.  15 U.S.C. § 1125(a)(1)(A & B); <u>Lexmark Intern, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1384 (2014).  Here, Plaintiff's Lanham Act claim under Count II appears predicated solely on prong one for false association, not prong two for false advertising.  Cmpt., ¶ 34.  Indeed, the threadbare allegations under Count II do not purport to assert any of the essential elements of a false advertising claim under the Lanham Act: "(1) a false statement of fact by the defendant in a commercial advertisement about its own products or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its product."  <u>Heartland Payment Systems, Inc. v. Mercury Payment Systems</u>, LLC, 2014 WL 5812294 * 4 (N.D. Cal. 2014) (dismissing false advertising claim stemming from oral statements as insufficiently plead under Fed. R. Civ. Proc. 9(b) and as failing to constitute commercial advertising or promotion within meaning of Lanham Act).  Indeed, the only allegation of false or misleading advertising comes in a one-off, conclusory statement in the last count of the Complaint—Count V for unfair competition under Business and Professions Code Section 17200.  Cmpt., ¶ 49.  Because these allegations are both devoid of any supporting facts and are not incorporated under earlier counts, they fail to state facts sufficient to constitute a false advertising claim under the Lanham Act.  Separately, to the extent

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

predicated on allegations of fraud, mistake or deception [see Cmpt., ¶ 49], the allegations in the Complaint are insufficient to meet the heightened pleading requirements under Fed. R. Civ. Proc. 9(b); see Heartland, 2014 WL 5812294 * 3-5 (applying Rule 9(b) to Lanham Act false advertising claim and dismissing claim for, among other things, failure to state facts with sufficient particularity required under the rule).

To the extent Plaintiff intended to allege a false advertising claim, or would now seek leave of court to so allege, the claim is barred for three independent reasons. First, as explained above, Defendants' seminar does more than pose a commercial transaction under our commercial speech doctrine, and as such it does not constitute "commercial advertising or promotion" within the meaning of the Lanham Act. Id. at * 4 (citing Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999)); see also Proctor & Gamble v. Haugen, 222 F.3d 1262, 1274 (10th Cir. 2000) ("[T]he meaning of 'commercial speech' in the context of § 43(a)(1)(B) of the Lanham Act tracks the First Amendment 'commercial speech' doctrine."). Second, though Plaintiff has allege consumer confusion over its sponsorship of or associate with the webcast, it has not alleged any false statement of fact sufficient to state a claim under the false advertising prong of the Lanham Act. Id. at * 6 ("[W]ithout some specific allegation as to what statements in the documents are false and why, Heartland fails to state a claim under Rule 9(b) and the Lanham Act."). Third, the Plaintiff has failed to allege sufficient facts to meet the two-part test set forth by the United States Supreme Court in Lexmark to confer standing to sue for false advertising under the Lanham Act. To establish standing to sue for false advertising, a plaintiff must allege (1) "an injury to a commercial interest in reputation or sales" and (2) "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Lexmark, 134 S.Ct. at 1390, 1391. At most, Plaintiff has alleged that "Defendants are able to attract customers who mistakenly believe they will attend a program sponsored or affiliated with Applied Underwriters" and that this somehow "jeopardize[s] Applied Underwriters' reputation…" Cmpt., ¶ 27; id., ¶ 36. Not only are these allegations insufficient under Twombly/Iqbal, as mere conclusions devoid of factual support, they fail to allege an injury to a commercial interest in reputation or that this injury directly flows

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD

from the deception wrought by any false statements of fact.  The pleading of such facts is all the more important here where Defendants' speech critical of Plaintiff's services is otherwise fully protected under the First Amendment.  Thus, to the extent Plaintiff is attempting to assert a false advertising claim, or would seek leave to amend to allege such a claim, this claim should be dismissed.

**F.     Plaintiff's State Unfair Competition Claim (Bus. & Prof. Code § 17200) Fails For the Same Reasons Its Federal Unfair Competition and Trademark Infringement Claims Fail.**

Plaintiff's unfair competition claim under California Business and Professions Code Section 17200 is predicated on the same set of facts as its federal unfair competition and trademark infringement claims.  Cmplt. ¶¶ 37-40; 46-51.

The Ninth Circuit has found that trademark claims and unfair competition claims under California state law are "substantially congruent" with federal trademark and unfair competition claims and thus are subject to the same analysis.  See Grupo Gigante S.A. de C.V. v. Dallo & Co., 391 F.3d 1088, 1100 (9th Cir. 2004) (quoting Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020 n.10 (9th Cir. 2004)); Yelp Inc. v. Catron, 2014 WL 4966706, at *10 (N.D. Cal. Oct. 1, 2014).  Accordingly, the Court may dismiss Plaintiff's state unfair competition claim under the same defenses and insufficiencies in pleading as set forth above.

## IV.     CONCLUSION

Because Plaintiff fails to allege a cognizable unfair competition or trademark infringement claim stemming from Defendants' use of its marks in the title of an educational seminar about Plaintiff's services, Defendants respectfully request that this action be dismissed in its entirety without leave to amend.

Dated:  December 14, 2015                    JASSY VICK CAROLAN LLP

                                             /s/_____
                                             Duffy Carolan
                                             Attorneys for Defendants
                                             Providence Publications, LLC, and
                                             J Dale Debber

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-cv-02445-GEB-CKD