UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED UNDERWRITERS INC., a Nebraska corporation,<br><br>Plaintiff,<br><br>v.<br><br>LARRY LICHTENEGGER, J. DALE DEBBER, both individuals, and PROVIDENCE PUBLICATIONS, LLC, a California limited liability company,<br><br>Defendants. | No. 2:15-cv-02445-TLN-CKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND GRANTING DEFENDANTS' MOTION TO DISMISS** |

The matter is before the Court on Defendant Providence Publications, LLC ("Providence Publications"), Larry J. Lichtenegger ("Lichtenegger"), and J. Dale Debber's ("Debber"), (collectively, "Defendants") Motion to Dismiss and Request for Judicial Notice. (ECF Nos. 13 & 14.) Providence Publications and Debber originally moved to dismiss and Lichtenegger later joined that motion. (ECF Nos. 13 & 28.) Plaintiff Applied Underwriters, Inc. ("Plaintiff") opposes the motion and the request. (ECF Nos. 19 & 20.) For the reasons detailed below, the Court GRANTS in part and DENIES in part Defendants' request for judicial notice (ECF No. 14) and GRANTS Defendants' motion to dismiss (ECF No. 13).

////

////

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff sells workers' compensation insurance programs to businesses.  (ECF No. 1 ¶¶ 15 & 16.)  Plaintiff alleges that it has been using the trademarks, Applied Underwriters and EquityComp (collectively, the "Trademarks"), since 2001 and 2002, respectively, to sell financial services relating to workers' compensation programs to brokers and their business clients.  (ECF No. 1 ¶¶ 14–16.)  Plaintiff also alleges that the United States Patent and Trademark Office issued federal trademark registrations to Plaintiff for the Trademarks.  (ECF No. 1 ¶ 17 & Ex. A.)  Plaintiff contends that it has spent millions of dollars advertising the Trademarks in connection with its services — including nearly $4 million in 2015.  (ECF No. 1 ¶¶ 18 & 19.)  Plaintiff asserts the Trademarks possess significant goodwill and are famous. (ECF No. 1 ¶ 20.)

Defendants produce a seminar, available on DVD and webcast, that is critical of one of Plaintiff's insurance programs, "EquityComp."  (ECF No. 1 ¶ 23 & Ex. B.)  Defendants' seminar is titled, "Applied Underwriters' EquityComp Program, Like it, Leave it, or Let it be?  Learn the best strategies for selling, competing with, or helping a prospect out of EquityComp mid-term."  (ECF No. 1, Ex. B.)  Plaintiff alleges that Defendants' use of Plaintiff's company name, Applied Underwriters, and of the program name, EquityComp, in Defendants' seminar's title and related advertising infringes and dilutes the value of the Trademarks.  (ECF No. 1 ¶¶ 24–27.)

Plaintiff alleges that Defendants operate a website for Providence Publications as well as another website, Workers' Comp Executive.  (ECF No. 1 ¶ 24.)  Plaintiff alleges that Defendants advertise their seminar in promotional email sent to potential attendees, including those who use Plaintiff's services.  (ECF No. 1 ¶¶ 24 & 25.)  Plaintiff alleges that the email includes a list of topics the seminar will address, including: how to sell the program and to compete against it; what agreements employers and their lawyers must review and sign before offering the program; whether the program is legal in California; and the concept of "unconscionability."  (ECF No. 1, Ex. B.)  Plaintiff alleges that the email refers to news articles about the "controversial" program, Debber's role as a journalist who "broke the recent spate of stories about Applied Underwriters' EquityComp Program," and Lichtenegger's role as an attorney representing employers against Plaintiff.  (ECF No. 1, Ex. B.)

Plaintiff asserts five claims: trademark infringement; trademark dilution; violation of the Lanham Act; and federal and state law unfair competition.  (ECF No. 1 ¶ 1 & 43.)  Defendants move to dismiss all five claims and for the Court to take judicial notice of a DVD of the seminar, four web pages, and articles related to Applied Underwriters.  (ECF Nos. 13 at 2–3; 14 at 2–3.)

## II.     REQUEST FOR JUDICIAL NOTICE

In conjunction with Defendants' motion to dismiss, Defendants request that the Court take judicial notice of the following: a DVD of Defendants' seminar referenced in Plaintiff's complaint; a screen shot of the home page of the Providence Publications website; screen shots of three web pages from Defendants' Workers' Comp Executive website — the home page, the About Us page, and a list of available webcasts; and copies of six articles published on the Workers' Comp Executive website.  (ECF No. 14 at 2–3.)

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation omitted).  When a court considers material outside the pleading in deciding a motion to dismiss for failure to state a claim, the motion becomes a motion for summary judgment. *Id*., Fed.R.Civ.P. 12(b)(6).  Two exceptions exist: one for material attached to the complaint or referred to in the complaint if the complaint necessarily relies on that material and its authenticity and relevance are not disputed, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), and one for matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Lee*, 250 F.3d at 688–89 (citing Fed.R.Evid. 201).

Plaintiff does not oppose Defendants' request for judicial notice of the DVD.  In its complaint, Plaintiff relies on the existence of the DVD, the DVD's title, and the related advertising.  (ECF No. 1 ¶¶ 23–24.)  Accordingly, the Court GRANTS Defendants' request and takes judicial notice of the DVD (ECF No. 14, Ex. 1). *Coto Settlement*, 593 F.3d at 1038.

Regarding the screen shot of the Providence Publications home page, Plaintiff has not opposed this request.  Plaintiff does refer to the Providence Publications website in its complaint as a location where viewers can access the webcast, but does not mention the home page.  (ECF No. 1 ¶¶ 24, 47.)  Even so, "the mere mention of the existence of a document is insufficient to

3

1  incorporate the contents of a document." *Coto Settlement*, 593 F.3d at 1038. The mention of the
2  website is brief and Plaintiff does not necessarily rely on either the existence of the home page or
3  the contents of that home page. The Court DENIES Defendants' request to take judicial notice of
4  the screen shot of the Providence Publications home page (ECF No 14, Ex. 2).

5        Regarding screen shots of the Workers' Comp Executive home page, About Us page, and
6  webcasts list, Plaintiff referred to the website in its complaint as a location where viewers can
7  access the webcast. (ECF No. 1 ¶¶ 13, 24 & 47.) Plaintiff did not discuss these pages and does
8  not necessarily rely on the existence or content of these pages. *Coto Settlement*, 593 F.3d at 1038.

9        Further, Plaintiff asserts the material is not accurate because the content of those pages has
10  been altered since Plaintiff filed its complaint. (ECF No. 20 at 4–5.) Plaintiff points to alternate
11  screen shots it claims show the content of the pages as they were when Plaintiff filed its
12  complaint and describes changes made to the pages. (ECF No. 20 at 4–5.) The Court finds that
13  the three Workers' Comp Executive web pages cannot be "accurately and readily determined
14  from sources whose accuracy cannot reasonably be questioned." *See* Fed.R.Evid. 201; *Fraley v.*
15  *Facebook, Inc.*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011) (declining to take judicial notice of
16  web pages accessed after the events giving rise to the suit because the pages may not have been in
17  existence or contained the same content during the relevant time period).

18        To the extent Defendants provided the screen shots to show the current content rather than
19  the content of the pages at the time Plaintiff filed its complaint, Defendants have not explained
20  the relevance. Accordingly, the Court DENIES Defendants' request to take judicial notice of the
21  screen shots of the three Workers' Comp Executive web pages (ECF No. 14, Exs. 3 & 10).

22        Finally, Defendants request that the Court take judicial notice of six articles published on
23  Defendants' Workers' Comp Executive website "illustrating news reporting about Plaintiff
24  Applied Underwriters' EquityComp insurance programs," and showing that Defendants are not
25  competitors of Plaintiff. (ECF Nos. 14 ¶¶ 4–9; 21 at 22.) Defendants do not site legal authority
26  which supports this request. Defendants do cite several cases in which courts considered material
27  that expanded on or provided context for material on which the plaintiff relied in its complaint.
28  (ECF No. 14 at 3.)

The court in *Burnett v. Twentieth Century Fox*, 491 F. Supp. 2d 962 (C.D. Cal. 2007) reviewed a larger portion of a television show, a few second clip of which formed the basis of the complaint. *Id*. at 973. Similarly, the court in *Knieval v. ESPN*, 393 F.3d 1068 (9th Cir. 2005), reviewed the web pages a viewer *must* access and click through to view the single image and caption that were the basis of that defamation suit. *Id*. at 1076–77. In another case, the court took notice of three documents the plaintiff explicitly referred to in its complaint, but declined to take notice of a web page to which the plaintiff did not refer. *Heartland Payment Systems, Inc. V. Mercury Payment Systems, LLC*, 2014 WL 5812294 *3 (N.D. Cal. Nov. 7, 2014).

Here, Defendants request judicial notice of articles whose date of drafting and publication cannot be accurately and readily determined from sources whose accuracy cannot be questioned. Plaintiff does not rely on the articles in its complaint, the articles do not form the basis of the claims, they do not expand on other material, and their relevance is not clear. Defendants do not assert that the articles must be viewed or accessed by viewers of the webcast or that they surround the webcast, so they do not provide the type of context permitted in *Burnett* and *Knieval*. Accordingly, the Court DENIES Defendants' request to take judicial notice of the six articles. (ECF No. 14, Ex. 4–9.)

### III.    STANDARD OF LAW

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give a plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Additionally, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure

6

15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**IV.   ANALYSIS**

Defendants move to dismiss claims for trademark infringement, trademark dilution, Lanham Act violations, and federal and state law unfair competition claims based on the defense of nominative fair use. (ECF No. 13 at 15–18.) Plaintiff argues that Defendants did not need to use the Trademarks and used them more than necessary, and so they do not meet the requirements to qualify as nominative fair use. (ECF No. 19 at 7–12.) For reasons discussed below, the Court concludes that Defendants' use of the Trademarks is nominative fair use.

Defendants also move to dismiss claims for Lanham Act violations on First Amendment grounds and claims for trademark dilution based on statutory exemptions and failure to allege sufficient facts. (ECF No. 13 at 20–25.) Plaintiff opposes. (ECF No. 19 at 12–20.) Because the Court finds that Defendants' use is nominative fair use, it need not address these arguments.

Finally, Defendants move to dismiss claims, "[t]o the extent Plaintiff intended to allege a false advertising claim." (ECF No. 13 at 25–27.) Plaintiff states that it does not allege a false advertising claim. (ECF No. 19 at 20.) The Court, therefore, will not address these arguments.

A. <u>Nominative Fair Use</u>

Defendants argue that their use of the Trademarks in the seminar's title and in the promotional email is protected by the nominative fair use defense. (ECF No. 13 at 18.) Plaintiff argues Defendants' use exceeds the use permitted to qualify as nominative fair use. (ECF No. 19 at 8–12.) Nominative fair use is a defense to claims of trademark infringement, violations of the Lanham Act, trademark dilution, and federal unfair competition. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307–08 (9th Cir. 1992) (stating nominative fair use "lies outside the strictures of trademark law"); *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 805–06 (9th Cir. 2002) (holding that nominative fair use of a trademark does not dilute that trademark and concluding that nominative fair use is excepted from anti-dilution law).

The Court will not analyze the state unfair competition claim separately from the federal unfair competition claim. "State common law claims of unfair competition … are 'substantially congruent' to claims made under the Lanham Act." *Denbicare U.S.A. Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). Courts, therefore, use the same analysis when applying the nominative fair use defense to a federal unfair competition claim ground in trademark law as to a California state unfair competition claim, and this Court need not analyze the state claim separately.

"[I]t is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark." *New Kids on the Block*, 971 F.2d at 306–07 (citing *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), holding that an auto repair shop did not infringe by using the marks "Volkswagen" and "VW" in advertising that the shop repaired Volkswagen automobiles, where the shop owner did not suggest he was part of, sponsored by, or authorized by Volkswagen). In nominative fair use, the defendant "does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block*, 971 F.2d at 307. Infringement and unfair competition do not apply to this type of use because the defendant refers to the trademark holder's service, and does not imply the trademark holder approved the defendant's use of the trademark or is the source of the defendant's service. *Id*. at 308.

"In cases in which the defendant raises a nominative use defense, [a] three-factor test should be applied instead of the test for likelihood of confusion." *Playboy Enterprises,* 279 F.3d at 801; *see also Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175–76 (9th Cir. 2010) (applying the three-factor test instead of the eight-factor likelihood of confusion test that the district court applied). The three-factor test better evaluates the likelihood of confusion in nominative fair use cases than the eight-factor test, which focuses on the similarity between the mark the defendant used and the plaintiff's mark. *Playboy Enterprises*, 279 F.3d at 801. In nominative fair use cases, the defendant uses the plaintiff's mark, so they are identical, and applying the eight-factor test "would lead to the incorrect conclusion that virtually all nominative uses are confusing." *Id*.

The three factors are: (i) whether the product or service is readily identifiable without the trademark; (ii) whether the defendant used only as much of the trademark as reasonably necessary to identify the product or service; and (iii) whether the defendant falsely suggested sponsorship or endorsement by the trademark holder. *Playboy Enterprises*, 279 F.3d at 801.

>    i.   *Plaintiff's program, EquityComp, is not readily identifiable as the subject of the seminar without the use of the Trademarks.*

As to the first factor, Plaintiff argues that Defendants can identify the subject of their seminar without using the Trademarks by choosing a generic descriptor such as "Risk Sharing Workers' Comp Program" or "Captive Workers' Comp Arrangement Program." (ECF No. 19 at 8.) Defendants argue that their seminar does not provide generalized information about similar types of workers' compensation programs. (ECF No. 13 at 17.) Instead, it offers information about Plaintiff's specific insurance program, EquityComp. (ECF Nos. 13 at 17; 14, Ex. 1.)

Plaintiff's suggested generic descriptors would not describe the program offered as precisely. *New Kids on the Block*, 971 F.2d at 306 (stating it is "far simpler (and more likely to be understood) to refer to the Chicago Bulls" than to use generic phrases such as "the two-time world champions" or "the professional basketball team from Chicago"). A potential viewer might not realize that Defendants' seminar discusses EquityComp or might be misled into thinking that the seminar discusses other similar plans. *Id*. at 306–07 (stating that "reference to a large automobile manufacturer based in Michigan would not differentiate among the Big Three; reference to a large Japanese manufacturer of home electronics would narrow the field to a dozen or more companies"). It would be nearly impossible to communicate clearly that the seminar is about one specific program without using the Trademarks. *Toyota Motor Sales,* 610 F.3d at 1180 (finding a broker's use of "Lexus" in the domain names "buy-a-lexus.com" and "buyorleaselexus.com" was fair use because it would be nearly impossible to communicate that the broker specialized in Lexus vehicles without mentioning Lexus). Defendants' use of the Trademarks satisfies the first factor.

////

////

              *ii.*        *Defendants use only as much of the Trademarks as reasonably necessary to identify the product or service.*

Plaintiff argues that Defendants do not satisfy the second factor because Defendants use the Trademarks more frequently than needed by using the Trademarks multiple times in a promotional email.  (ECF No. 19 at 8–9.)

In *Playboy Enterprises*, the defendant Terri Welles used the term "Playmate of the Year 1981" on her website's masthead and banner ads, and used the term "PMOY '81" as a repeating watermark on her website's pages.  *Playboy Enterprises*, 279 F.3d at 799–800.  The Ninth Circuit determined that Welles used the marks in the masthead and banner ads to describe her former title and satisfied the second factor because she used "only the trademarked words, not the font or symbol associated with the trademarks."  *Id*. at 802 (citing examples of use that satisfies the second prong, including a repair shop's use of the term "Volkswagen" to inform customers of its repair services without using Volkswagen's logo, distinctive lettering, or colors; and a competitor comparing itself to Coco-Cola but not using its distinctive lettering).  In the promotional email, Defendants use only the words in a sans serif font and not the serif font or logos associated with the Trademarks.  (ECF No. 1, Ex. B.)  It would be nearly impossible to accurately describe the seminar without using the Trademarks.  Defendants' use in the seminar's title and subtitle to convey the seminar's subject is not more than necessary to accomplish that purpose.

The *Playboy Enterprises* court, however, found that Welles had used more of the marks than was necessary in placing a "PMOY '81" watermark in a repeating pattern as the background wallpaper for her website.  *Id*. at 802.  Plaintiff argues that Defendants use more of the Trademarks than is necessary in the promotional email because that email contains at least two uses of the term Applied Underwriters and six uses of the term EquityComp.  (ECF No. 19 at 9.)

That promotional email contains the seminar title in the subject line and again in the body of the message along with the subtitle, accounting for two uses of Applied Underwriters and three of the six uses of EquityComp.  (ECF No. 1, Ex B.)  The first item in the message is a large multicolor Workers' Comp Executive logo and tag line, and underneath this logo is the seminar title and subtitle, along with information about earning legal education credits for the seminar.

(ECF No. 1, Ex. B.)  Following that, the message contains a list of seventeen bullet point topics which the seminar will address, including the fourth use: "Is EquityComp a loss sensitive program?"  (ECF No. 1, Ex. B.)  The fifth use of EquityComp is a statement that viewers of the seminar will receive "A checklist to use to show the insured if you're competing against EquityComp."  The sixth use is a legend at the bottom of the email stating that "EquityComp is the registered trademark of Applied Underwriters, Inc."  (ECF No. 1, Ex. B.)

Additional text in the email provides come context.  Some of the other seventeen topics might also appear in advertising by Plaintiff, including "What you must know and do before you sell the program" and "What to look for in the proposal."  (ECF No. 1, Ex. B.)  Most of the other topics would probably not be included in materials from Plaintiff, including whether there are patterns to how clients are sued and what are they, why is venue an issue how to avoid getting sued, is the program agreement legal in California, what potential clients and their lawyers should review before signing up for the program, a review of the concept of "unconscionability," and how to compete against the program.  (ECF No. 1, Ex. B.)

A thick band down the length of the message body describes potential viewers as those who work with EquityComp or compete against it, suggests viewers learn about the program to "understand the competition," and describes the program as "sophisticated yet controversial."  (ECF No. 1, Ex. B.)  The band contains pictures of Lichtenegger and Debber with biographical information, including that Lichtenegger "represents a panoply of employers vs Applied" and that Debber "broke the recent spate of stories about Applied Underwriters' EquityComp program."  (ECF No. 1, Ex. B.)

Unlike Welles's use of the PMOY watermark, here Defendants use the Trademarks to describe their seminar as being about the EquityComp program.  About half the uses of the Trademarks in the email are in the seminar's title and subtitle.  Only one seminar topic in the seventeen listed uses the term EquityComp, though the seminar is focused on this one program.  Use of the term EquityComp in the promise to provide viewers with a checklist for competing against EquityComp is the clearest way to express to potential viewers the service that Defendants offer.  Defendants' use of the Trademarks satisfies the second factor.

          *iii.*      *Defendants' use does not suggest sponsorship or endorsement by Plaintiff.*

Plaintiff argues that Defendants' use of the registration symbol ® with EquityComp, and the legend at the bottom of the email message stating "EquityComp is the registered trademark of Applied Underwriters, Inc.," implies endorsement. (ECF No. 19 at 10–12.) A trademark owner may use a registration symbol and legend to assert its ownership and so the use may give the impression that the communication originated with the trademark owner. They may also be used by a non-owner to clarify ownership by acknowledging that the term used is owned by another entity and identifying that other entity. In this context, however, the other uses of the Trademarks, references to competing against the program, and unflattering references to Plaintiff in Defendants' biographical details, make clear that the message did not originate with Plaintiff.

The other uses of the Trademarks in the email, such as the seminar title, topic list, and checklist, are used to describe Defendants' services and explain that the seminar is about Plaintiff's program. The topic questions, descriptions of potential viewers as Plaintiff's competitors, and the biographical information, make clear that the seminar provides negative information and appear to disavow any sponsorship or endorsement. *Playboy Enterprises*, 279 F.3d at 805 (finding that Welles did nothing to suggest sponsorship and her discussion on the site of her legal difficulties with the plaintiff affirmatively disavowed any sponsorship or endorsement). It would be unreasonable for a viewer to assume that Plaintiff sponsors or endorses such an unflattering communication apparently aimed at its competitors.

Similarly, Defendants' use of the Trademarks in the seminar's title and subtitle do not imply endorsement but convey the subject. The subtitle makes clear that leaving the EquityComp program is a seminar topic. The negative implications about the program in the subtitle and the surrounding text in the email indicate that the webcast will be critical rather than attempt to appropriate Plaintiff's cachet. Defendants' use of the Trademarks satisfies the third factor.

The Court finds that Defendants' use of the Trademarks is nominative fair use. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claims for trademark infringement, violation of the Lanham Act, federal unfair competition, trademark dilution, and California state unfair competition, Counts I, II, III, IV, and V of the complaint.

B. <u>Leave to Amend</u>

"A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff has not previously amended its complaint and has requested leave to amend if the Court grants any portion of Defendants' motion to dismiss. (ECF No. 19 at 21.) Accordingly, the Court GRANTS Plaintiff's request and Plaintiff has leave to amend its complaint.

## V. CONCLUSION

Accordingly, for the reasons detailed above, IT IS HEREBY ORDERED that:

1. The Court GRANTS Defendants' request for judicial notice of the DVD of the seminar (ECF No. 14, Ex. 1) and DENIES Defendants' request for judicial notice of (a) the screen shot of the Providence Publications home page, (b) the screen shots of the three Workers' Comp Executive web pages, and (c) the six articles published on the Workers' Comp Executive website (ECF No. 14, Exs. 2-10).

2. The Court GRANTS Defendants' motion to dismiss Plaintiff's claims for trademark infringement, violations of the Lanham Act, federal unfair competition, trademark dilution, and California state unfair competition, Counts I, II, III, IV, and V of the complaint (ECF No. 13); and

3. Plaintiff is GRANTED leave to amend within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated: July 5, 2017

Troy L. Nunley
United States District Judge